U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 7 2017

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| LIFE PARTNERS HOLDINGS, INC., | § | Case No. 15-40289-RFN11 |
| | § | Chapter 11 |
| Debtor, | § | |
| | § | |
| ――――――――――――――――――――――― | § | |
| | § | |
| LIFE PARTNERS CREDITORS' TRUST | § | Adversary No. 16-04035-rfn |
| AND ALAN M. JACOBS, AS TRUSTEE | § | |
| FOR LIFE PARTNERS CREDITORS' | § | |
| TRUST, | § | |
| | § | |
| Plaintiffs, | § | District Court Case |
| | § | No. 4:16-CV-330-A |
| VS. | § | (Consolidated with |
| | § | No. 4:17-CV-112-A) |
| 72 VEST LEVEL THREE LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Came on for consideration multiple motions[1] filed by

defendants in the above-captioned action seeking dismissal of

claims made by plaintiffs, Life Partners Creditors' Trust and

Alan M. Jacobs, as Trustee for Life Partners Creditors' Trust, in

---

[1]Several of the motions to dismiss were filed in Adversary Case No. 16-04035-rfn. See Adv.
Docs. 468, 469, 470, 471, 472, 491, 492, 494, 497, 497-1, 498, 499, 506, 506-1, 506-2, 507, 508, 531,
532, & 538. Others were filed in this Case No. 4:16-CV-330-A after withdrawal of reference. See Docs.
11, 12, 17, 18, 20, & 21.
    The "Adv. Doc. ___" references are to the numbers assigned to the referenced items on the
bankruptcy court docket of Adversary No. 16-04035-rfn.
    The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in
this consolidated Case No. 4:16-CV-330-A.

their second amended complaint ("Complaint").[2]  After having considered such motions, the allegations of the Complaint, plaintiffs' omnibus response to the motions,[3] replies of defendants,[4] the report and recommendation regarding such motions issued by the bankruptcy judge on September 14, 2017,[5] objections to the report and recommendation,[6] plaintiffs' response to defendants' objections,[7] and pertinent legal authorities, the court has concluded that all claims asserted by plaintiffs in the Complaint should be dismissed.[8]

I.

## Identities of the Parties and the Nature of the Claims Asserted by Plaintiffs in the Complaint

Plaintiffs are the Life Partners Creditors' Trust and Alan M. Jacobs, as trustee for that trust.  The background that led to the creation of the trust, the designation of Alan M. Jacobs as

---

[2]Adv. Docs. 447 & 447-1 through 447-6.

[3]Docs. 23, 24, & 25.

[4]Docs. 35 & 50.

[5]Doc. 57.

[6]Docs. 58 & 59.

[7]Doc. 61.

[8]The court is satisfied that dismissal may be granted on behalf of similarly-situated defendants who have not filed their own motions to dismiss. Taylor v. Acxiom Corp., 612 F.3d 325, 340 (5th Cir. 2010); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981); Clinton Cmty. Hosp. Corp. v. S. Md. Med. Ctr., 374 F. Supp. 450, 453-54 (D. Md. 1974), aff'd, 510 F.2d 1037 (4th Cir. 1975).

trustee, and the contentions of plaintiffs concerning standing to make the claims they are asserting in this action are described in the Complaint. Adv. Doc. 447 at 9-11, ¶¶ 12-22. On those same subjects, the court makes reference to the Motion for Leave to: (1) Substitute Plaintiffs; and (2) Substitute Plaintiffs' Counsel filed February 14, 2017, in Adversary No. 16-04035-rfn, and its related February 16, 2017 Order. Adv. Docs. 440 and 442.

The defendants are collectively referred to in the Complaint as "Defendant Licensees." Adv. Doc. 447 at 8. Plaintiffs also say that defendants "are Life Partners' Referring Licensees," but then refer to "all Referring Licensees" as though defendants are a sub-group of them. Id. at 6, ¶ 4. They are listed in paragraph 9 of the Complaint, id. at 6-8, ¶ 9, and in the Complaint's Exhibit 1, id. at 6, n.2 and Adv. Doc. 447-1. The defendants thus named and listed are 205 in number.[9] Adv. Doc. 447-1 at 34.

Plaintiffs alleged in the Introduction of the Complaint that the "lawsuit seeks to recover commissions paid to the Defendants by [Life Partners]" and "damages suffered by investors who assigned their claims to the Creditors Trust." Adv. Doc. 447 at 4, ¶ 1. The claims asserted in the Complaint are characterized

_____

[9]The Complaint indicates that its Exhibit 5 is a "copy of the annual total commissions received by the Defendant Licensees from 2008 through February, 2015." Adv. Doc. 447 at 28-29, ¶ 79. If plaintiffs accurately described Exhibit 5, 205 licensees would be named on it. Instead, Exhibit 5 appears to name over 825 licensees.

as either "Estate Claims," which are for "(1) fraudulent
transfers under the Texas Uniform Fraudulent Transfer Act and 11
U.S.C. § 548; (2) breach of contract; and (3) preference claims
under 11 U.S.C. § 547 and various disallowance claims under 11
U.S.C. §§ 502 and 510," or "Investor Claims" (or "Investor
Assigned Claims"), which are for "(1) negligent
misrepresentation; (2) breach of the Texas Securities Act based
upon the sale of unregistered securities by unlicensed brokers;
(3) for rescission pursuant to the TSA; and (4) for breach of
fiduciary duty." Id. at 6, ¶¶ 5-7; 48-50. The assignments of
those claims to plaintiffs were alleged to have been accomplished
by, or pursuant to, the bankruptcy plan that was confirmed
November 1, 2016, and became effective December 9, 2016. Id. at
10-11, ¶¶ 21-22.

The dollar amount of recovery plaintiffs are seeking from
each of the defendants is not alleged in the Complaint unless the
"Grand Totals" shown on the Complaint's Exhibit 5 relate to that
subject. Adv. Doc. 447-5. The Complaint does say that "all
Referring Licensees received in excess of $102 million in
commissions." Adv. Doc. 447 at 6, ¶ 4. Confusingly, it also says
that "the Defendant Licensees collectively received over $52
million in commissions and fees." Id. at 28, ¶79. In addition to
seeking recovery of unspecified amounts of monetary damages from

defendants, id. at 51, ¶ 191, plaintiffs seek to impose a constructive trust against all licensees. Id. at 50-51, ¶¶ 187-188. While the allegations lack clarity, apparently the res of the trust is to be whatever money each of the defendants received as compensation for sales on behalf of Life Partners of fractional interests in life insurance policies to the thousands of investors that are identified in Exhibit 6 to the Complaint. Id. at 50-51; Doc. 447-6.

Plaintiffs described the Estate Claims they are asserting as follows:

Count 1 asserts actual fraudulent transfer claims against all Licensees shown on Exhibit 5 to the Complaint[10] based on section 24.005(a)(1) of the Texas Business & Commerce Code through 11 U.S.C. § 544. Adv. Doc. 447 at 40-43, ¶¶ 115-26.

Count 2 asserts constructive fraudulent transfer claims based on section 24.005(a)(2) of the Texas Business & Commerce Code through 11 U.S.C. § 544, again

---

[10]Exhibit 5 is the Complaint's exhibit that appears to name more than 825 persons in contrast to the 205 defendants named in the Complaint and in its Exhibit 1. Further, Exhibit 5 is described as "a true and correct copy of the annual total commissions received by the Defendant Licensees from 2008 through February, 2015." Adv. Doc. 447 at 28-29, ¶ 79. And, Count 1 seeks to avoid transfers made "in the form of fees and commissions," id., at 40, ¶ 116, but Exhibit 5 purports to list only commissions. The Complaint itself indicates that Referring Licensees, which appears to include defendants, did not receive fees. Id. at 32, ¶ 91.

brought against all Licensees shown on Exhibit 5. Id. at 43-44, ¶¶ 127-39.

Count 3 asserts actual fraudulent transfers against certain Licensees as contemplated by 11 U.S.C. § 548(a)(1)(A). Id. at 45, ¶¶ 140-44.

Count 4 asserts constructive fraudulent transfer claims against certain Licensees as contemplated by 11 U.S.C. § 548(a)(1)(B). Id. at 45-46, ¶¶ 145-52.

Count 5 asserts preference claims brought pursuant to 11 U.S.C. § 547 against certain Licensees shown on Exhibit 5. Id. at 46, ¶¶ 153-59.

Count 6 asserts claims against all Licensees for recovery of all avoided transfers as authorized by 11 U.S.C. § 550. Id. at 46, ¶¶ 160-62.

Count 7 asserts breach of contract claims against all Licensees. Id. at 46-47, ¶¶ 163-68. The court's understanding is that the breach of contract claims have been abandoned by plaintiffs, Doc. 23 at 9, ¶ 6.

Count 8 asserts equitable subordination claims by which plaintiffs seek to cause all claims of all Licensees to be equitably subordinated as contemplated by 11 U.S.C. § 510(c). Adv. Doc. 447 at 47-48, ¶¶ 169-72.

Count 9 seeks disallowance of all claims of all
Licensees pursuant to the authority of 11 U.S.C.
§ 502(d).  <u>Id.</u> at 48, ¶¶ 173-74.

The "Investor Assigned Claims" alleged by plaintiffs are as
follows:

Count 10 asserts negligent misrepresentation
claims against certain Licensees.[11]  <u>Id.</u> at 48-49,
¶¶ 175-77.

Count 11 asserts claims against certain Licensees
for breach of the Texas Securities Act.  <u>Id.</u> at 48-49,
¶¶ 178-81.

Count 12 asserts claims of breach of fiduciary
duty against certain Licensees.  <u>Id.</u> at 50, ¶¶ 182-85.

In addition to the Estate Claims and Investor Assigned
Claims mentioned above, plaintiffs make constructive trust
claims, apparently against all Licensees, and a request for
recovery of attorneys' fees and costs, again apparently against

---

[11]The headings in the Complaint for Counts 10, 11, and 12 all say that the counts are "Against Certain Licensees." Adv. Doc. 447 at 48-50. The nearest plaintiffs come to identifying the "Certain Licensees" is to say in a footnote to the Count 10 heading that "[a]ttached hereto as Exhibit 6 is a chart detailing the association and relationship between Licensees and Investors with regard to sales to specific investors." <u>Id.</u> at 48 n.23. The footnote reference is carried forward in the headings for Counts 11 and 12. <u>Id.</u> at 49 n.24, & 50 n.25. Exhibit 6 to which the footnotes refer is a 344-page document listing what it describes as "Direct-Contact Licensees" and what appear to be thousands of names under the heading "Investor(s)." Adv. Doc. 447-6 at 1-344. The court has not been able to find anything in the Complaint that would explain why plaintiffs made the footnote references to Exhibit 6 in the headings for Counts 10, 11, and 12.

all Licensees, pursuant to the authority of section 24.013 of the Texas Business & Commerce Code.[12]  Id. at 50-51, ¶¶ 186-90.

## II.

## Main Grounds of the Motions to Dismiss

The grounds for dismissal most frequently asserted in the motions to dismiss are the failures of plaintiffs to satisfy the pleading standards of Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure.  Those grounds are discussed in a general way under this heading.

A.  The Rule 8(a)(2) Pleading Standards

Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") makes Rule 8 of the Federal Rules of Civil Procedure applicable to adversary proceedings.  Rule 8(a)(2) provides the standard of pleading for a complaint. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).

---

[12]Plaintiffs also alleged entitlement to attorneys' fees and costs against licensees pursuant to section 38.001 of the Texas Civil Practice & Remedies Code by virtue of "the Licensee Defendants' breach of contract."  Adv. Doc. 447 at 51, ¶ 190.  The court considers that the section 38.001 claim for attorneys' fees and costs is no longer in the case because of plaintiffs' abandonment of their breach of contract claims.

Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In the testing of the adequacy of allegations under Rule 8(a), any reference by a plaintiff to defendants collectively in a complaint fails to satisfy the pleading standards of Rule 8(a).

See <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir.
1999); <u>see also</u> <u>Searcy v. Knight (In re Am. Int'l Refinery)</u>, 402
B.R. 728, 738 (Bankr. W.D. La. 2008).

B.    <u>Rule 9(b) Standards for the Pleading of Claims Based on
      Fraud</u>

Rule 7009 of the Bankruptcy Rules makes Rule 9(b) of the
Federal Rules of Civil Procedure applicable to adversary
proceedings.  Rule 9(b) applies to all cases where the gravamen
of the claim is fraud even though the theory supporting the claim
is not technically termed fraud.  <u>Frith v. Guardian Life Ins. Co.
of Am.</u>, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).  Claims alleging
violations of the Texas Insurance Code and the Texas DTPA as well
as those for fraud, fraudulent inducement, fraudulent
concealment, and negligent misrepresentation are subject to the
requirements of Rule 9(b).  <u>Berry v. Indianapolis Life Ins. Co.</u>,
608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); <u>Frith</u>, 9 F. Supp. 2d
at 742.  In other words, all claims that have fraudulent conduct
as an element are subject to the Rule 9(b) pleading standards.
<u>See</u> <u>Lone Star Fund V (U.S.), LP v. Barclays Bank PLC</u>, 594 F.3d
383, 387 n.3 (5th Cir. 2010); <u>see also</u> <u>Berry</u>, 608 F. Supp. 2d at
799; <u>In re Am. Int'l Refinery</u>, 402 B.R. at 737; <u>Ingalls v.
Edgewater Private Equity Fund III, L.P.</u>, No. CIV.A. H-05-1392,
2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005); <u>Tigue Inv. Co.,</u>

Ltd. v. Chase Bank of Tex., N.A., No. 3:03-CV-2490-N, 2004 WL 3170789, at *1-*2 (N.D. Tex. Nov. 15, 2004).

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted). To satisfy this requirement, plaintiffs must identify in the Complaint "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." See Tuchman v. DCS Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks and brackets omitted); see also Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008).

In Ackerman v. Northwestern Mutual Life Insurance Co., 172 F.3d 467, 469 (7th Cir. 1999), the court provided an explanation of the defensible purpose of the heightened pleading requirement of Rule 9(b) by saying that it served "to force the plaintiff to do more than the usual investigation before filing his complaint." Id. The rationale behind Rule 9(b) is that "[f]raud charges can seriously damage a defendant's reputation,

even when the claim is ultimately defeated." <u>Tigue Inv. Co.,</u>
<u>Ltd.</u>, 2004 WL 3170789, at *2.

"General allegations, which lump all defendants together
failing to segregate the alleged wrongdoing of one from those of
another cannot meet the requirements of Rule 9(b)." <u>Id.</u> at *1
(brackets, internal quotation marks, and citations omitted). <u>See</u>
<u>also</u> <u>Ingalls</u>, 2005 WL 2647962, at *5 (quoting from <u>Glaser v. Enzo</u>
<u>Biochem, Inc.</u>, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003)(that
group pleading does not satisfy the who, what, where, why, and
when required by 9(b), and that, instead, specificity is required
for each defendant)); <u>In re Am. Int'l Refinery</u>, 402 B.R. at 738
(stating that "[t]he allegations in the Complaint that refer to
Defendants collectively do not satisfy the heightened pleading
standards of Rule 9(b)").

The Rule 9(b) standards apply as to each defendant even when
hundreds of similarly situated defendants are named. <u>See</u>
<u>Ackerman</u>, 172 F.3d at 470-71 (stating, in the context of a
multiple-plaintiff lawsuit, that "[o]f course . . . compliance
with Rule 9(b) is burdensome. But you cannot get around the
requirements of the rule just by joining a lot of separate cases
into one.").

III.

## Analysis

As disclosed below in the discussions of the counts of the Complaint, the court has adopted recommendations of the bankruptcy judge that the allegations of certain counts fail to comply with the pleading standards of the Federal Rules of Civil Procedure, with the result that the inadequately pleaded claims are to be dismissed. As to the other claims, the court has concluded from the court's independent evaluation of the merits of the grounds of the motions to dismiss that all claims asserted by plaintiffs in the Complaint are insufficiently pleaded, that some are rendered moot because of insufficient pleading of predicate claims, and that all claims should be dismissed. With one exception,[13] the court finds no reason to address recommendations of the bankruptcy judge that bear on issues unrelated to the reasons for dismissal discussed in this memorandum opinion and order.

For the sake of consistency, the court is giving all defendants the benefit of the court's rulings, even if the ruling is based on a ground not asserted by a defendant in a motion to dismiss. Plaintiffs have had ample opportunity to fully respond to all of the grounds that have led to the court's decision to

---

[13]The exception is the discussion in footnote 16 on page 26.

dismiss all claims; and, it would be inappropriate to leave claims pending against some of the defendants who, because of lack of resources or for other reason, were unable or failed to file a full motion to dismiss. The grounds the court has found meritorious apply to all defendants. See, supra, n.8.

A.    The Count 1 and Count 3 Claims

Count 1 sets forth a claim for actual fraudulent transfer under section 24.005(a)(1) of the Texas Business & Commerce Code, asserted through 11 U.S.C. § 544(b)(1). Section 24.005(a)(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .

Elements of fraudulent transfer under Texas law are: (1) a creditor, (2) debtor, (3) debtor transferred assets shortly before or after the creditor's claim arose, (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors. Nwokedi v. Unlimited Restoration Specialists, Inc., 428 S.W.3d 191, 203 (Tex. App.-Houston [1st Dist.] 2014, pet. denied).

Count 3 sets forth claims for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A). The language of § 548(a)(1)(A) is substantially similar to the language recited under Count 1 regarding fraudulent transfer with actual intent to defraud. The court is satisfied that the same pleading standard applies to these counts.

The court agrees with the bankruptcy judge's report that the allegations in Counts 1 and 3 fail to comply with the Rule 8(a) standards. Doc. 57-1 at 14, 18. The allegations do not identify the transferor or any particular transferee; nor is there any allegation of the amount paid by the transferor to a particular transferee. The Count 1 and Count 3 allegations simply do not allege facts from which the conclusion can be reached that plaintiffs have stated a plausible fraudulent transfer claim against any particular defendant.

Moreover, a ground asserted by some of the defendants for dismissal of Count 1 focuses on the requirement that a trustee can bring an action under § 544(b) only if there is a "triggering" unsecured creditor that could have brought such an action when the bankruptcy petition was filed. U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc., 479 B.R. 405, 410 (N.D. Tex. 2012). They urge that plaintiffs have not identified such a triggering creditor and that, as a consequence, Count 1 must be

15

dismissed. In this regard, the court agrees. Although the consensus appears to be that the trustee need not specifically name the triggering creditor, the cases make clear that facts must be pleaded sufficient to identify at least the class or categories of creditors that could assert a fraudulent transfer claim. See Askanase v. Fatjo, No. H-91-3140, 1993 WL 208682, at *4 (S.D. Tex. Apr. 22, 1993)(trustee must establish the existence of an allowed claim that could have been avoided); Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.), 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008)(naming the categories of triggering creditors).

Here, plaintiffs simply make the conclusory statement that "Life Partners' creditors, or the Investors, could have brought the state law fraudulent transfer claims now asserted." Adv. Doc. 447 at 40, ¶ 117. Plaintiffs do not plead that the investors are unsecured creditors so as to meet the requirement of § 544(b). Identifying in some way the triggering creditors would have been easy enough. The reference to "Life Partners' creditors, or the Investors" is simply too amorphous, especially given that there are several debtors and the bankruptcy petitions were filed at different times. See U.S. Bank, 479 B.R. at 413; Adelphia Recovery Tr. v Bank of Am., N.A., 390 B.R. 80, 94 (S.D.N.Y. 2008), aff'd, 379 F. App'x 10 (2d Cir. 2010); Doc. 57 at 14

(noting that the bankruptcy cases were not substantively consolidated).

As the bankruptcy judge notes, plaintiffs do not allege which debtors made which fraudulent transfers to which defendants. Doc. 57 at 14. See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc., 817 F. Supp. 2d 934, 940-41 (N.D. Tex. 2011)(fraudulent transfer sufficiently pleaded when plaintiff identified the date of transfers, the amount of each, and the consideration, if any, received as to each debtor/transferor); Janvey v. Stinson, No. 3:10-CV-2586-N, 2013 WL 2948085, at *5 (N.D. Tex. June 14, 2013)(pleading sufficient where it apprised defendant of sufficiently substantial amount of particularized information about claim to enable defendant to understand it and effectively prepare a responsive pleading and overall defense); Airport Blvd. Apts., Ltd. v. NE 40 Partners, Ltd. P'ship (In re NE 40 Partners, Ltd. P'ship), 440 B.R. 124 (Bankr. S.D. Tex. 2010)(discussing requirement of pleading specifically and the tools of the trustee to fully investigate claims before asserting them).

With regard to the applicability of the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure to Counts 1 and 3, the court disagrees with the bankruptcy judge. Clearly, counts that involve claims of actual fraud, such as

Counts 1 and 3, invoke the heightened pleading requirements of Rule 9(b). See Guffy v. Brown (In re Brown Medical Center, Inc.), 552 B.R. 165, 168 (S.D. Tex. 2016); O'Cheskey v. CitiGroup Global Markets, Inc. (In re American Housing Found.), 543 B.R. 245, 264-65 (Bankr. N.D. Tex. 2015); Crescent Res. Litig. Tr. v. Nexen Pruet, L.L.C. (In re Crescent Res., L.L.C.), Adv. No. 11-01082-CAG, 2012 WL 195528, at *7 (Bankr. W.D. Tex. Jan. 23, 2012). And, it is the debtors' intent at the time of the conveyances that is critical. Roland v. United States, 838 F.2d 1400, 1402 (5th Cir. 1988). Counts 1 and 3 do not contain any specificity as to the "who, what, when, where, and how" of the alleged fraudulent conduct of debtors showing that they intended to defraud creditors by paying commissions to defendants. More than conclusory allegations are necessary to show that each transfer was made with the intent to defraud creditors.

Plaintiffs have not pleaded any of the facts necessary to plausibly show entitlement to relief as to these counts.

B.    The Count 2 and Count 4 Claims

Count 2 sets forth a claim for constructive fraudulent transfer under section 24.005(a)(2) of the Texas Business & Commerce Code, asserted through 11 U.S.C. § 544. Section 24.005(a)(2) provides:

> A transfer made or obligation incurred by a debtor
> is fraudulent as to a creditor, whether the creditor's

claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transactions; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The elements are the same as for count 1, except that instead of proving actual intent to defraud, plaintiffs would have to prove that the debtor, without receiving reasonably equivalent value in exchange for the transfer, engaged in a transaction for which its remaining assets were unreasonably small or it intended to incur debts beyond its ability to pay as they became due.

Count 4 sets forth claims for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). The language of § 548(a)(1)(B) is substantially similar to the language recited under Count 2. The court is satisfied that the same pleading standard applies to these counts.

Again, the court agrees with the bankruptcy judge's report that the allegations in Count 2 and Count 4 fail to comply with

the Rule 8(a) standards.[14] Doc. 57-1 at 16-17, 18. As before, the allegations do not identify the transferor or any particular transferee; nor is there any allegation of the amount paid by the transferor to a particular transferee, much less information as to why the value of the particular consideration was less than the amount transferred. Nor are any facts pleaded to support the debtors' insolvency at the time of each transfer. Allegations that merely mirror the elements set forth in the statute are insufficient. Crescent Res., 2012 WL 195528, at *8.

As in Count 1, plaintiffs have failed to identify in Count 2 a triggering unsecured creditor that could have brought the claim when the bankruptcy petitions were filed. U.S. Bank, 479 B.R. at 410.

The Complaint simply does not allege facts from which the conclusion can be reached that plaintiffs have stated a plausible claim against any particular defendant for constructive fraudulent transfer under state or bankruptcy law. Though they repeatedly make conclusory allegations, e.g., that debtors were "perpetually insolvent" and "insolvent from the beginning," Adv.

---

[14]Whether the Rule 9(b) pleading requirements apply is a closer question, with some cases indicating that it does, see e.g., NE 40 Partners, 440 B.R. at 129; Walker v. Pasteur (In re Aphton Corp.), 423 B.R. 76, 88 (Bankr. D. Del. 2010), and some that it does not, see, e.g., American Housing Found., 543 B.R. at 264; Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.), 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015). Inasmuch as the allegations of Counts 2 and 4 fail to meet the requirements of Rule 8(a), the court need not decide whether Rule 9(b) applies to these claims.

Doc. 447 at 35, ¶ 97; 42, ¶ 122, the facts they have alleged show that debtors were awash in cash, e.g., debtors "raised more than $1.8 billion," id. at 15, ¶ 43, and purchased life insurance policies "on a wholesale basis" while selling them for "grossly overpriced" amounts, id. at 16, ¶¶ 46-47. And, while defendants "received over $52 million in commissions and fees," id. at 28, ¶ 79, the "on average received approximately 12% of the total investment dollars," id. at 31, ¶ 83.

C.    The Count 5 Claims

Count 5 asserts preference claims brought pursuant to 11 U.S.C. § 547 against certain licensees shown on Exhibit 5 to the Complaint. To state a claim for preferential transfer, a plaintiff must plead that the transfer of an interest in the debtor's property was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
>     (A) within 90 days before the date of the filing of the petition; or
>     (B) [] within one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) [such that the] payment enables such creditor to receive more than such creditor would if--
>     (A) the case were a case under Chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

<u>Crescent Res.</u>, 2012 WL 195528, at *5.

As noted by the bankruptcy judge, plaintiffs fail to even identify which defendants allegedly received preferences. They do not identify the debtor making the transfer to which licensee on what particular date. Doc. 57-1 at 19-20. Count 5 does not allege sufficient facts to plausibly state any claim for preferential transfer.

D.   <u>The Count 6 Claims</u>

Count 6 asserts claims against all licensees for recovery of all avoided transfers (described in Counts 1-5), as authorized by 11 U.S.C. § 550. Thus, for Count 6 to be viable, any of Counts 1-5 must also be viable. And, for the reasons discussed, none of them are sufficiently pleaded to survive dismissal. Therefore, Count 6 must likewise be dismissed.

E.   <u>The Count 7 Claims</u>

Count 7 asserts breach of contract claims. Plaintiffs have represented that they will voluntarily withdraw these claims. The court accepts the recommendation of the bankruptcy judge that Count 7 be dismissed. Doc. 57-1 at 21.

F.   <u>The Count 8 Claims</u>

In Count 8, plaintiffs seek to equitably subordinate defendants' claims to the claims of all other stakeholders pursuant to 11 U.S.C. § 510(c). The Fifth Circuit applies a

three-prong test for equitable subordination: (1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in harm to the creditors of the bankrupt or conferred an unfair advantage upon the claimant; and (3) equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. Wooley v. Faulkner (In re SI Restructuring, Inc.), 532 F.3d 355, 360 (5th Cir. 2008). Equitable subordination is ordinarily employed in only three typical cases: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.), 119 F.3d 349, 357 (5th Cir. 1997).

In this case, plaintiffs have not pleaded that defendants are fiduciaries of the debtors. Nor are they alleged to have controlled the debtors to the disadvantage of other creditors. Nor is there any allegation that any defendant actually defrauded another creditor of any debtor. Plaintiffs simply have not pleaded facts to support an equitable subordination claim against any defendant. In sum, equitable subordination is an unusual remedy to be applied in limited circumstances. Margaux Tex.

Ventures, Inc. v. Cooper (In re Margaux Tex. Ventures, Inc.), 545 B.R. 506, 514 (Bankr. N.D. Tex. 2014)(citing cases). This is not such a case.

G. The Count 9 Claims

In Count 9, plaintiffs seek to disallow claims of licensees pursuant to 11 U.S.C. § 502(d). That section provides, in pertinent part: "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title." Inasmuch as plaintiffs have failed to state any claims that may be pursued under the referenced statutes, the claims of Count 9 must be dismissed.

H. The Count 10 Claims

The court has concluded that plaintiffs' Count 10 claims of negligent misrepresentation are deficient because of plaintiffs' failure to satisfy the pleading requirements of Rule 8(a)(2) and of Rule 9(b).

The elements of a claim for negligent misrepresentation are: (1) a representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not

exercise reasonable care or competence in obtaining, or

communicating, the information; and, (4) the plaintiff suffered

pecuniary loss by justifiably relying on the representation.

Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex.

1991).

The Count 10 claims apparently relate to sales of thousands

of undivided interests in life insurance policies to an equal

number of investors by hundreds of licensees.[15]  Plaintiffs

failed to allege the required factual specificity as to any

transaction.  There is no way to determine from plaintiffs'

general, conclusory allegations the facts upon which they rely

for recovery against any defendant as to any particular

transaction.  The Complaint does not contain an allegation of any

fact concerning the conduct of a particular defendant but always

refers collectively to all, or "certain," Licensees.  That

shortcoming, standing alone, causes the allegations to fail the

Rule 8(a) pleading standards.

Moreover, there is no allegation of any representation made

by any identified defendant or concerning the circumstances under

which any defendant made any representation; nor is there any

allegation of the kind of information any identified defendant

---

[15]While the Count 10 heading indicates that the negligent misrepresentation claims are against only "Certain Licensees," Adv. Doc. 447 at 48, there is nothing in the Complaint that identifies those "Certain Licensees."

provided to any person or any reason why any defendant supplied any information to any person.  Nor does the Complaint contain any allegation that would support a conclusion that any identified defendant failed to exercise reasonable care or competence in obtaining, or communicating, any information.  Nor is there any allegation that any identified recipient of any information supplied by any defendant justifiably relied on the information, much less that any such recipient suffered any pecuniary loss by relying on such information.  Plaintiffs' Count 10 claims cannot survive a motion to dismiss for failure to state a claim because no facts are alleged that would allow the court to infer that plaintiffs' alleged right to relief against any of the defendants is plausible.

Therefore, the court concurs with the bankruptcy judge's conclusion that plaintiffs' Count 10 allegations do not satisfy Rule 8(a)'s pleading requirements; and, the court adopts that conclusion and the bankruptcy judge's further conclusion that the pleading burden of complying with Texas law and Rule 8(a)[16] does

---

[16]The only objection made by plaintiffs to the bankruptcy judge's report and recommendation was directed to the bankruptcy judge's conclusion that the duty element of the negligent misrepresentation claim requires a special relationship between the parties.  Doc. 58 at 1, 5-6.  The court agrees with plaintiffs' objection.  See Fed. Land Bank v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991); see also In re Soporex, Inc., 446 B.R. 750, 781 (Bankr. N.D. Tex. 2011).  Nevertheless, Count 10 is subject to dismissal by reason of the Rule 8(a) and Rule 9(b) deficiencies mentioned in the text.

not excuse plaintiffs from meeting the Rule 8(a) pleading standards. See Doc. 57-1 at 26.

The court disagrees with what appears to be a conclusion reached by the bankruptcy judge that Rule 9(b) is not applicable to plaintiffs' Count 10 claims. See Doc. 57-1 at 36. The Complaint is replete with allegations that licensees made false and fraudulent representations to the investors. See Adv. Doc. 447 at 4-5, ¶ 3; 28, ¶¶ 76 & 78; 29, ¶ 81; 33-34, ¶ 93; 36, ¶ 100; 44, ¶ 137; 48, ¶ 176. Those allegations are so intertwined with other allegations related to the alleged inappropriate conduct of the licensees as to clearly invoke the Rule 9(b) requirement that plaintiffs must allege the particulars of the time, place, and contents of the alleged false representations, as well as the identity of the person making the representation and what that person obtained thereby. Plaintiffs' failure to satisfy that pleading standard as to any defendant provides yet another reason why dismissal of the Count 10 claims is appropriate.

I. The Count 11 Claims

The Count 11 allegations do not identify the defendants who allegedly committed a breach of the Texas Securities Act other than to say that "certain Licensee Defendants offered to sell these securities, while being unlicensed brokers engaged in the

sale of unregistered securities." Adv. Doc. 447 at 49, ¶ 181.
That allegation is immediately followed by the allegation that
"[c]onsequently, those Licensee Defendants have violated the
Texas Securities Act and are liable to their specific Investors
for either rescission, or damages in the minimum amount of their
investment." Id. Plaintiffs fail to satisfy the Rule 8(a)
pleading standards by failing to identify the defendants who
allegedly engaged in the conduct about which plaintiffs complain
or the investors to which the complaint applies. Nor is there
any suggestion in the allegations as to which of the hundreds of
defendants in this action are claimed to be unlicensed brokers
engaged in the sale of unregistered securities.[17] Those
shortcomings alone cause Count 11 to be subject to dismissal.

Added to those shortcomings are the failure of plaintiffs in
Count 11 to identify the investors who might have a claim for
rescission as distinguished from those who might have a claim for
damages. There is no way to determine from the allegations in
Count 11 which investors continue to own the securities and which
no longer own them. As a result, the reader of the Complaint has
no way of knowing which of the investors might be claiming
damages from a defendant or defendants.

---

[17]Plaintiffs admit that the investments at issue were not even determined to be securities until
after the bankruptcy filing. Adv. Doc. 447 at 33, n.20.

The bankruptcy judge concluded in his report and
recommendation that Count 11 contained overly-broad allegations
that included claims that are barred by limitations.  Doc. 57-1
at 37.  For that reason, the bankruptcy judge recommended that
the court "grant the motions to dismiss count 11 with prejudice
as to transactions occurring before March 6, 2014."  <u>Id.</u> at 38.
The court agrees that the Count 11 allegations have that
shortcoming, so, in that sense, the court adopts the
recommendation of the bankruptcy judge; but, the court has
concluded that all claims in Count 11 should be dismissed for the
reasons given above.

J.    The Count 12 Claims

The heading in the Complaint for Count 12 shows that it is
against only "Certain Licensees."  Adv. Doc. 447 at 50.  For that
reason alone, Count 12 is subject to dismissal for failure to
comply with the Rule 8(a) pleading standards.  The bankruptcy
judge recommended dismissal of Count 12 because of the failure of
the trustee to plead facts that give rise to a fiduciary
relationship.  This court agrees with that recommendation, and
adopts it.  There are other reasons why dismissal would be
appropriate, but the court does not consider that there is a need
to discuss all of them.  However, the court does add that the
allegations of Count 12 (that "the Licensees misrepresented

material facts to the investors") cause Rule 9(b) to be applicable. Plaintiffs' failure to comply with the Rule 9(b) pleading standards, <u>supra</u> at 10-12, provides another reason why the Count 12 claims must be dismissed.

K.    The Constructive Trust Claims

The bankruptcy judge recommended in his report and recommendation that the constructive trust claims be dismissed for the same reasons the Count 12 claims should be dismissed. The court agrees with the bankruptcy judge, and adopts that recommendation, and concludes that the constructive trust claims should be dismissed.

IV.

The Court is Not Permitting Repleading

The court is not accepting the recommendations made from time to time by the bankruptcy judge that plaintiffs be permitted to replead as to certain issues or as to certain defendants. The conclusions of this court that the allegations of the Complaint are deficient cannot possibly come as a surprise to plaintiffs.

The initial complaint in the adversary action was filed March 11, 2016, Adv. Doc. 1, and the first amended complaint was filed April 6, 2016, Adv. Doc. 268. The defendants filed twenty-six motions to dismiss the first amended complaint, starting with one filed on May 12, 2016, and continuing through the final one

filed February 13, 2017, less than one month before the second amended complaint was filed on March 6, 2017. <u>See</u> Adv. Docs. 315, 318, 320, 321, 328, 330, 331, 332, 333, 341, 342, 343, 344, 345, 346, 349, 350, 351, 353, 355, 356, 358, 360, 366, 367, 395, 397, 398, 400, 402, 403, 405, 406, 407, 419, 420, 438, 439.

Plaintiffs were alerted by those motions to the inadequacies of the allegations of the complaint related to the "Estate Claims," and were made fully aware that the defendants were going to insist on strict compliance with applicable pleading standards as to any claims plaintiffs might allege. They knew when they filed their second amended complaint that insufficient allegations would be brought under attack. They, thus, knew before they filed the third version of their complaint that they must, at risk of dismissal, do whatever needed to be done to be sure that they satisfied the pleading standards. Indeed, the bankruptcy court twice abated the proceedings before the second amended complaint was filed, in part to give plaintiffs an opportunity to again amend their pleadings, undoubtedly knowing that defendants were going to insist on strict compliance with applicable pleading standards as to any claims that might be alleged. Adv. Docs. 392, 422. Plaintiffs cannot complain that they did not have time to gather the requisite knowledge to plead

specifically.  See NE 40 Partners, 440 B.R. at 128 (trustee has many tools to enable him to gather information).

In response to the second amended complaint plaintiffs filed March 6, 2017, defendants filed more than twenty motions to dismiss, Doc. 23 at 2, again calling plaintiffs attention to the pleading deficiencies as to the "Estate Claims," adding this time notice to plaintiffs of the pleading deficiencies in the added "Investor Claims."  If plaintiffs had the ability to plead their claims in compliance with the applicable pleading standards, they certainly knew by May 5, 2017, that they should seek leave to file another amended complaint for the purpose of satisfying those standards.  Yet, no suggestion was made by plaintiffs in their May 5, 2017 omnibus response to defendants' motions to dismiss, Doc. 23, that plaintiffs could improve on the allegations of the second amended complaint, or that anything would be gained by allowing plaintiffs to replead with the goal of curing their pleading deficiencies.[18]

_____

[18]In their response to other objections, filed October 10, 2017, plaintiffs offered to file "amended charts" (referring to the exhibits to the Complaint).  Doc. 61 at 8.  They have not sought leave to file amended charts nor have they provided any indication of what further detail would be provided or how the amended charts could possibly resolve the numerous pleading deficiencies under Fed. R. Civ. P. 8(a) and 9(b).

In Herrmann Holdings, Ltd., the Fifth Circuit had the following to say in an action in which the plaintiffs had filed an original and two amended complaints:

> At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.

302 F.3d at 567 (quoting Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986)). That point has been reached in this action. The court has decided that plaintiffs have had a fair opportunity to make their case, and that the time has come for the court to finally dismiss the suit.

Undoubtedly, plaintiffs know that they have done the best they can do. They have not sought leave to file an amended pleading at any time since defendants started filing their motions to dismiss; nor have they ever suggested that they would be able to overcome their pleading deficiencies if given an opportunity to do so. Defendants have exhausted enough resources in response to the inadequately pleaded complaints of plaintiffs, without being called upon to go another round. Therefore, the court is not permitting plaintiffs to replead.

## Conclusion and Order

For the reasons stated above, the court concludes that all claims asserted by plaintiffs against the defendants in the above-captioned action should be dismissed with prejudice.

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiffs against the defendants in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED November 17, 2017.

JOHN McBRYDE
United States District Judge